UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

ROBERT D. SANGO,

                Plaintiff,                Case No. 1:15-cv-71

v.                                  Honorable Janet T. Neff

UNKNOWN ERYER et al.,

                Defendants.

_____/

## OPINION DENYING LEAVE
## TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES

Plaintiff Robert D. Sango, a prisoner incarcerated at Ionia Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983.  Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $400.00 civil action filing fee applicable to those not permitted to proceed *in forma pauperis* within twenty-eight (28) days of this opinion and accompanying order.  If Plaintiff fails to do so, the Court will order that his action be dismissed without prejudice.  Even if the case is dismissed, Plaintiff will be responsible for payment of the $400.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

## Discussion

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's

request for the privilege of proceeding *in forma pauperis*.  As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners – many of which are meritless – and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  For that reason, Congress put into place economic incentives to prompt a prisoner to "stop and think" before filing a complaint.  *Id.*  For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b).  The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit.  *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits.  Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).  The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal.  The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury."  The Sixth Circuit has upheld the constitutionality of the "three-strikes" rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder  and is *ex post facto* legislation.  *Wilson v. Yaklich*, 148 F.3d

596, 604-06 (6th Cir. 1998); *accord Pointer v. Wilkinson*, 502 F.3d 369, 377 (6th Cir. 2007) (citing *Wilson*, 148 F.3d at 604-06); *Rodriguez v. Cook*, 169 F.3d 1176, 1178-82 (9th Cir. 1999); *Rivera v. Allin*, 144 F.3d 719, 723-26 (11th Cir. 1998); *Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997).

Plaintiff has been a very active litigant in the federal courts in Michigan over the last two years. In more than three of Plaintiff's lawsuits, the Court entered dismissals for failure to state a claim. *See Sango v. Lewis et al.*, No. 1:14-cv-342 (W.D. Mich. July 18, 2014); *Sango v. Huss*, No. 1:14-cv-2 (W.D. Mich. June 12, 2014); *Sango v. Miniard et al.*, 1:14-cv-344 (W.D. Mich. June 10, 2014); *Sango v. Hammond et al.*, No. 1:14-cv-283 (W.D. Mich. May 6, 2014); *Sango v. Novak*, No. 1:14-cv-343 (W.D. Mich. Apr. 23, 2014). In addition, Plaintiff repeatedly has been denied leave to proceed *in forma pauperis* in this Court because he has three strikes. *See Sango v. Michigan State Office of Administrative Hearings and Rules et al.*, No. 1:14-cv-1272 (W.D. Mich. Jan. 13, 2015); *Sango v. Curtis et al.*, No. 1:14-cv-823 (W.D. Mich. Aug. 14, 2014); *Sango v. Wakley et al.*, 1:14-cv-703 (W.D. Mich. July 8, 2014).

Moreover, notwithstanding Plaintiff's conclusory statements to the contrary, his allegations do not fall within the exception to the three-strikes rule for a prisoner under imminent danger of serious physical injury. The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf.* [*Pointer v.*

- 3 -

> *Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).

> In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists.  To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)."  *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013).  A prisoner's claim of imminent danger is subject to the same notice pleading requirement as applied to prisoner complaints.  *Id*.  Consequently, a prisoner must allege facts in the complaint from which court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations.  *Id*.

Plaintiff alleges that Defendant Eryer rammed his flashlight up Plaintiff's rectum in order to stop him from pursuing a prior civil rights action, *Sango v. Ault et al.*, No. 1:14-cv-345 (W.D. Mich.).[1]  For unspecified reasons, Eryer allegedly

> mounted a new campaign of harassment, which has escalated to him not feeding me, and poisoning me (again, so he says) and leaving me in a cell with no heat (to weaken my "immune system") and water with urine and fecal matter in it to (to cause "illness") having not been fed, and poisoned.

(Compl., ¶ 7, docket #1, Page ID#2.)  To flesh out these conclusory assertions, Plaintiff makes specific allegations about only one date, January 20, 2015.  On the morning of January 20, 2015, while Defendant Eryer was making rounds, Eryer told Plaintiff that "he put the same poison in [my]

---

[1]Plaintiff does not specify when the alleged assault occurred, but he alleges that Eryer subsequently became aware that the suit against him had been dismissed.  Plaintiff's civil rights action against Defendant Eryer was on March 1, 2014.  *See Sango v. Ault*, No. 1:14-cv-345 (docket #10) (Plaintiff's amended complaint dropped claims against all defendants except Defendant Tyluki).

food that had caused me to bleed from the inside, last year." (*Id.*, ¶ 8.)  Defendant Eyrer allegedly told Plaintiff that "this time he would not fail." (*Id.*)  At approximately 11:00 a.m., a prisoner celled across the hall from Plaintiff began to complain that his toilet was broken because it was full of urine and fecal matter.  Officers moved that prisoner out and moved another prisoner in to the same cell, without informing him about the toilet.  The new person flushed his toilet, and the water flooded into Plaintiff's cell.  Defendant Berrington came to Plaintiff's cell a bit later, saying that

> the stuff that 'we put in your food was some nasty stuff' that I was lucky to be still waking around.  He told me to stop snitching on his bros (i.e. fellow officers) and he would get them off my back, if not (he said) you're a dead piece of shit.

(*Id.*, ¶ 9.)  When Plaintiff asked for something to stop the contaminated water from coming into his cell, Bennington told him to "soak it all in, and make the right choice . . . ." (*Id.*, ¶ 10, Page ID#3.) While Eryer was serving dinner that day, he told Plaintiff that

> he and other officers would come up with a reason to send me to meet my maker if I didn't dismiss all of my pending civil actions, that poison moves faster, the weaker I get, and not feed me dinner.

(*Id.*, ¶ 11.)  Defendant Hilzey allegedly laughed and said "you['re] dead either way Sango." (*Id.*) When picking up dinner trays that night, Defendants Hilzey and Morgrige laughed and said that "they couldn't wait to 'dead your stupid ass this weekend.'" (*Id.*, ¶ 12.)

To the extent that Plaintiff asserts that Eryer used a flashlight to penetrate Plaintiff's anus in 2014, he alleges only a past injury.  Such a claim is insufficient to support imminent danger. *See Rittner*, 290 F. App'x at 797-98.

In addition, although Plaintiff's allegations, if true, suggest that he was being verbally harassed by Defendants on January 20, 2015, possibly in retaliation for Plaintiff's complaints and legal actions, they fail to support an inference that Plaintiff was in imminent danger within the meaning of § 1915(g).  Plaintiff does not allege that he was actually poisoned or that he suffered any

physical injury.  Despite the threats that Plaintiff would be killed, nothing at all happened on the designated weekend.  Indeed, Plaintiff acknowledges that his claim about poisoning is theoretical, based solely on the threats made.  (*See*, *e.g.*, Compl., ¶ 7 (alleging "again, so he says").)  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.   *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).  If harassment on one day does not support a claim that Plaintiff suffered, it most certainly does not demonstrate that physical injury is imminent.

Moreover, in his remaining allegations, Plaintiff alleges nothing more than that he missed one meal and had to put up with toilet overflow seeping into his room for a short period of time.  Nothing about these allegations indicates that Plaintiff faced a serious health risk, much less imminent danger of serious physical injury.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (holding that temporary inconveniences, such as being subjected to a flooded cell, do not rise to the level of an Eighth Amendment injury); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

In sum, Plaintiff's allegations are insufficient to allow the Court to draw a "reasonable inference[] that [imminent] danger exists."   *Vandiver*, 727 F.3d at 585.

In light of the foregoing, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action.  Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $400.00.  When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).  If Plaintiff

- 6 -

fails to pay the filing fee within the 28-day period, his case will be dismissed without prejudice, but

he will continue to be responsible for payment of the $400.00 filing fee.


Dated:  February 12, 2015                          /s/ Janet T. Neff                                    
                                                   Janet T. Neff
                                                   United States District Judge


**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:
Clerk, U.S. District Court
399 Federal Building
110 Michigan Street, NW
Grand Rapids, MI 49503

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**